United States District Court

Eastern District of California

John Garcia,

      Plaintiff,

vs.

Mule Creek State Prison, et al.,

      Defendants.

No. Civ. S 03-1947 MCE PAN P

Findings and Recommendations

-oOo-

Plaintiff is a state prisoner without counsel prosecuting a civil rights action against prison officials. Plaintiff claims defendant Dr. Wong at Salinas Valley State Prison and defendant Dr. Smith at Mule Creek State Prison misdiagnosed plaintiff's condition as pink eye, resulting in improper treatment and causing the loss of the eye, in violation of plaintiff's rights under the Eighth Amendment.

February 25, 2005, Drs. Smith and Wong moved for summary judgment. Plaintiff opposed June 1, 2005, and defendants replied

1  July 7, 2005.  (December 17, 2003, the court advised plaintiff of
2  the requirements for opposing a motion pursuant to Rule 56 of the
3  Federal Rules of Civil Procedure.  See Rand v. Rowland, 154 F.3d
4  952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035
5  (1999); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).)
6
7       A party may move, without or without supporting affidavits,
8  for a summary judgment and the judgment sought shall be rendered
9  forthwith if the pleadings, depositions, answers to
10 interrogatories, and admissions on file, together with the
11 affidavits, if any, show that there is no genuine issue as to any
12 material fact and that the moving party is entitled to a judgment
13 as a matter of law.  Fed. R. Civ. P. 56(a)-(c).
14      An issue is "genuine" if the evidence is such that a
15 reasonable jury could return a verdict for the opposing party.
16 Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  A fact is
17 "material" if it affects the right to recover under applicable
18 substantive law.  Id.  The moving party must submit evidence that
19 establishes the existence of an element essential to that party's
20 case and on which that party will bear the burden of proof at
21 trial.  Celotex Corporation v. Catrett, 477 U.S. 317, 322 (1986).
22 The moving party "always bears the initial responsibility of
23 informing the district court of the basis for its motion and
24 identifying those portions of 'the pleadings, depositions,
25 answers to interrogatories, and admissions on file, together with
26 the affidavits, if any'" that the moving party believes

1  demonstrate the absence of a genuine issue of material fact. Id.
2  at 323.  If the movant does not bear the burden of proof on an
3  issue, the movant need only point to the absence of evidence to
4  support the opponent's burden.  To avoid summary judgment on an
5  issue upon which the opponent bears the burden of proof, the
6  opponent must "go beyond the pleadings and by her own affidavits,
7  or by the "'depositions, answers to interrogatories, and
8  admissions on file,' designate 'specific facts showing that there
9  is a genuine issue for trial.'"  Id., at 324.  The opponent's
10 affirmative evidence must be sufficiently probative that a jury
11 reasonably could decide the issue in favor of the opponent.
12 Matsushita Electric Industrial Co., Inc. v. Zenith Radio
13 Corporation, 475 U.S. 574, 588 (1986).  When the conduct alleged
14 is implausible, stronger evidence than otherwise required must be
15 presented to defeat summary judgment.  Id. at 587.
16      Fed. R. Civ. P. 56(e) provides that "supporting and opposing
17 affidavits shall be made on personal knowledge, shall set forth
18 such facts as would be admissible in evidence, and shall show
19 affirmatively that the affiant is competent to testify to the
20 matters stated therein."  Nevertheless, the Supreme Court has
21 held that the opponent need not produce evidence in a form that
22 would be admissible at trial in order to avoid summary judgment.
23 Celotex, 477 U.S. at 324.  Rather, the questions are (1) whether
24 the evidence could be submitted in admissible form and (2) "if
25 reduced to admissible evidence" would it be sufficient to carry
26 the party's burden at trial.  Id., at 327.  Thus, in Fraser v.

3

1 Goodale, 342 F.3d 1032 (9th Cir. 2003), objection to the opposing
2 party's reliance upon her diary upon the ground it was hearsay
3 was overruled because the party could testify to all the relevant
4 portions from personal knowledge or read it into evidence as
5 recorded recollection.

6     A verified complaint based on personal knowledge setting
7 forth specific facts admissible in evidence is treated as an
8 affidavit.  Schroeder v. McDonald, 55 F.3d 454 (9th Cir. 1995);
9 McElyea v. Babbitt, 833 F.2d 196 (9th Cir. 1987).  A verified
10 motion based on personal knowledge in opposition to a summary
11 judgment motion setting forth facts that would be admissible in
12 evidence also functions as an affidavit.  Johnson v. Meltzer, 134
13 F.,3d 1393 (9th Cir. 1998); Jones v. Blanas, 393 F.3d 918 (9th
14 Cir. 2004).  Defects in opposing affidavits may be waived if no
15 motion to strike or other objection is made.  Scharf v. United
16 States Attorney General, 597 F.2d 1240 (9th Cir. 1979)
17 (incompetent medical evidence).

18     "The unnecessary and wanton infliction of pain upon
19 incarcerated individuals under color of law constitutes a
20 violation of the Eighth Amendment . . . ." McGuckin v. Smith, 974
21 F.2d 1050, 1059 (9th Cir. 1991).  A violation of the Eighth
22 Amendment occurs when prison officials deliberately are
23 indifferent to a prisoner's medical needs.  Id.  The threshold
24 for a medical claim under the Eighth Amendment is extremely high:

25     A prison official acts with "deliberate indifference .
    . . only if [he] knows of and disregards an excessive
26     risk to inmate health and safety." Gibson v. County of

4

|   |   |
|---|---|
| 1 | <u>Washoe, Nevada</u>, 290 F.3d 1175, 1187 (9th Cir. 2002) (citation and internal quotation marks omitted). Under this standard, the prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but that person "must also draw the inference." <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994). "If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk." <u>Gibson</u>, 290 F.3d at 1188 (citation omitted). This "subjective approach" focuses only "on what a defendant's mental attitude actually was." <u>Farmer</u>, 511 U.S. at 839. "Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights. <u>McGuckin</u>, 974 F.2d at 1059 (alteration and citation omitted). |

<u>Toguchi v. Chung</u>, 391 F.3d 1051, 1057 (9th Cir. 2004) (footnote omitted).

"Deliberate indifference to medical needs may be shown by circumstantial evidence when the facts are sufficient to demonstrate that a defendant actually knew of a risk of harm." <u>Lolli v. County of Orange</u>, 351 F.3d 410, 421 (9th Cir. 2003) (citations omitted); <u>see</u> <u>also</u> <u>Gibson</u>, 290 F.3d at 1197 (acknowledging a plaintiff may demonstrate that officers "must have known" of a risk of harm by showing the medical need was obvious and extreme). Delay in medical treatment can amount to deliberate indifference if (1) the delay seriously affected the medical condition for which plaintiff was seeking treatment, and (2) defendants were aware the delay would cause serious harm. <u>Shapley v. Nevada Board of State Prison Commissioners</u>, 766 F.2d 404, 408 (9th Cir. 1985).

The evidence is undisputed that plaintiff arrived at Mule Creek State Prison September 13, 2001, and Dr. Smith examined his

right eye September 19, 2001.  Dr. Smith diagnosed conjunctivitis, prescribed an antibiotic ointment and referred plaintiff to the Eye Clinic where he was examined by a contract optometrist, Dr. Col, September 20, 2001.  Dr. Col referred plaintiff to Dr. Tesluk, an opthalmologist, who examined plaintiff September 21, 2001.  Dr. Tesluk found that part of plaintiff's eye was hemorrhaging and some of the vasculature of the eye was inflamed, secondary to plaintiff's diabetes.  Tesluk also found partial retinal detachment stemming from a penetrating injury in plaintiff's childhood.  Tesluk treated plaintiff over the ensuing months, eventually removing his right eye and inserting a prosthesis.

There is nothing to suggest Dr. Smith gave plaintiff deficient treatment.  Smith's referrals enabled plaintiff to receive extensive opthalmological treatment commencing within two days.  Indeed, plaintiff's opposition to summary judgment claims no misconduct by Smith.  Dr. Smith is entitled to judgment in his favor.

Defendant Wong's declaration in support of summary judgment states as follows.  Plaintiff came to Wong as a walk-in patient January 22, 2001, complaining of tenderness and a burning sensation in his right eye.  Wong noted in the medical chart that plaintiff suffered insulin-dependent diabetes mellitus and there was no prior chart "available" for him.  Wong diagnosed conjunctivitis of the right eye and prescribed Cortisporin.  Wong decl. para. 5.  February 1, 2001, Wong examined plaintiff's

1  finger and athlete's foot; plaintiff did not complain about his
2  eye.  Wong decl. para. 6.  April 16, 2001, plaintiff visited Wong
3  in the clinic and asked to resume Dilantin, a seizure medication.
4  Plaintiff said nothing about his eye.  Wong decl. para. 7.  May
5  14, 2001, plaintiff visited Wong in the clinic and complained his
6  right eye hurt and was "tearing" excessively.  Dr. Wong found no
7  conjunctivital infection (viz., redness) in either of plaintiff's
8  eyes, diagnosed ocular allergy and prescribed Naphazoline, an
9  antihistimine.  Wong decl. para. 8.  May 21, plaintiff visited
10 Wong in the clinic stating his right eye had not improved.  Dr.
11 Wong observed there was a tiny infection, diagnosed bacterial
12 conjunctivitis and eczema, and ordered Tobradez, an antibiotic.
13 Wong decl. para. 9.  June 8, 2001, plaintiff visited Dr. Wong in
14 the clinic complaining of skin ulcers on his chest, left thigh
15 and right buttocks but said nothing about his eye.  Wong decl.
16 para. 10.  July 2, 2001, plaintiff visited Dr. Wong in the clinic
17 for additional treatment of his skin infection and complained of
18 no eye problems.  Wong decl. para. 11.  August 20, 2001,
19 plaintiff visited Dr. Wong in the clinic complaining of a skin
20 infection on his leg and requesting pain medicine but did not
21 complain about his eye.  Wong decl. para. 12.  September 5, 2001,
22 Dr. Wong ordered insulin for plaintiff.  Wong decl. para. 13.
23     Plaintiff's opposition to summary judgment includes his
24 declaration that January 22, 2001, he told Dr. Wong his right eye
25 was bloodshot, constantly watering and caused such pain plaintiff
26 could not sleep, his eyesight was failing and an ophthomologist

7

had ordered a "B-Scan" after examining him August 15, 2000.  Dr. Wong said he knew of the prior examination and plaintiff would see an ophthalmologist and get the B-Scan.  Opposition page 3. Plaintiff avers he saw Dr. Wong again February 1, 2001, and told him he had gone completely blind, the pain was worse, his condition was deteriorating and the medicine was not working but that Dr. Wong said to give the medicine more time to work. Opposition page 3.  Plaintiff avers that when he saw Dr. Wong April 16, 2001, plaintiff complained of eye pain, burning, and blindness.  Opposition page 3.  Plaintiff avers that when he saw Dr. Wong May 14, 2001, plaintiff was in unbearable pain and his eye was swollen, closing, watering and burning; he told Wong the Naphazaline was not working and asked to see a specialist.  Dr. Wong promised plaintiff would see a specialist and prescribed Motrin in the meantime.  Plaintiff told Dr. Wong May 21, 2001, that the treatments were not working, the pain was worse, and he could not eat or sleep.  Plaintiff's eye burned and watered more and was completely bloodshot.  Dr. Wong changed plaintiff's medication to Toberdex and promised plaintiff would see an opthalmologist.  Opposition page 4.  Plaintiff filed a grievance June 10, 2001, addressed to Dr. Wong at the informal level, claiming Dr. Wong was not properly treating plaintiff's eye but Dr. Wong never responded.  Opposition page 4.  When plaintiff saw Dr. Wong July 2, 2001, plaintiff asked why Dr. Wong did not respond to the grievance.  Dr. Wong said there was nothing he could do because plaintiff was already partially blind from his

1  childhood accident.  Dr. Wong allegedly said that all he could do
2  was have plaintiff transferred to Administrative Segregation for
3  "protected custody."  Plaintiff asked if that was a threat and
4  Wong laughed.  Opposition page 5.  August 10, 2001, plaintiff
5  filed another grievance requesting examination by an
6  opthalmologist or eye specialist for severe pain, blindness, and
7  a swollen, bloodshot and watering eye.  Dr. Wong examined
8  plaintiff August 20, 2001.  Plaintiff again asked Dr. Wong why he
9  did not answer the grievance requesting an opthalmological
10 examination.  Plaintiff again mentioned the need for a B-Scan and
11 Wong said he would receive one.  Plaintiff told Dr. Wong
12 plaintiff soon would be transferred to another prison and
13 plaintiff was transferred to Mule Creek September 13, 2001.
14 Opposition page 6.

15      Plaintiff also presents Dr. Wong's response to an
16 interrogatory stating "[a]lthough the medical record entry for
17 February 1, 2001, does not reflect that plaintiff presented
18 complaints of the right eye on that day, it is my normal practice
19 to see how the inmate/patient was doing from the last visit."
20 Plaintiff also submits a copy of the consultation notes from the
21 August 2000 opthalmology examination, which reflects the need for
22 a B-Scan.

23      There are factual disputes and they would be material to a
24 negligence claim, but they are not material to resolving the
25 Eighth Amendment claim.  Dr. Wong consistently examined
26 plaintiff, provided treatment and made a record of the treatment;

1  he may have been wrong but there is no evidence of willfulness.
2  Defendant Wong is entitled to summary judgment.
3      Accordingly, the court hereby recommends defendants'
4  February 25, 2005, motion for summary judgment be granted.
5      Pursuant to the provisions of 28 U.S.C. § 636(b)(1), these
6  findings and recommendations are submitted to the United States
7  District Judge assigned to this case.  Written objections may be
8  filed within 20 days of service of these findings and
9  recommendations.  The document should be captioned "Objections to
10 Magistrate Judge's Findings and Recommendations."  The district
11 judge may accept, reject, or modify these findings and
12 recommendations in whole or in part.
13     Dated:  August 4, 2005.

        /s/ Peter A. Nowinski
        PETER A. NOWINSKI
        Magistrate Judge